**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**HARRY GAZELLE AND DONNA GAZELLE,**

**Plaintiffs,**

**v.**

**MR 314 FORTALEZA LLC,**

**Defendant.**

**CIVIL NO. 16-2500 (GAG)**

## OPINION AND ORDER

This case involves a contract governing the sale of a corporation. Harry and Donna Gazelle ("Plaintiffs") sued MR 314 Fortaleza LLC ("Defendant") for breach of contract and mental anguish following a disagreement over the terms of a contract to purchase Plaintiffs' corporation, Calle Cristo 201, Inc. (Docket No. 1). Defendant filed a motion for summary judgment. (Docket No. 28). Plaintiffs opposed the motion and filed a cross motion for summary judgment. (Docket No. 40). Defendant opposed Plaintiffs' motion. (Docket No. 49). Plaintiffs replied (Docket No. 53), and Defendant sur-replied. (Docket No. 56).

After disposing of a preliminary matter involving Plaintiffs' request to strike portions of Defendant's reply statement of material facts at Docket No. 53, the Court **DENIES** Defendant's motion for summary judgment at Docket No. 28 and **DENIES** Plaintiffs' cross-motion for summary judgment at Docket No. 40.

### I.     Local Rule 56 and Plaintiffs' Request to Strike

Plaintiffs argue that a portion of Defendant's reply statement of material facts (Docket No. 50) improperly replies to certain paragraphs of Plaintiffs' opposition to Defendant's statement of

material facts. (Docket No. 53 at 1). This contention requires some untangling. Initially, Defendant submitted a statement of uncontested material facts with its motion for summary judgment. (Docket No. 21-8). When Plaintiffs responded in opposition, they included an opposing statement of material facts admitting, qualifying, and denying the paragraphs as set forth by Defendant, as well as a separate section of additional facts. Id. Defendant replied, not only to the separate section of additional facts, but also to Plaintiffs' responses to Defendant's original statement of uncontested material facts.[1] Plaintiffs request that Defendant's reply to their responses be stricken from the record or at least disregarded.

Local Rule 56 governs the procedure for summary judgment and section (d) is explicitly clear on this matter. "A party replying to the opposition to a motion for summary judgment shall submit with its reply a separate, short, and concise statement of material facts *which shall be limited to any additional facts submitted by the opposing party*." L. Cv. R. 56(c) (emphasis added). Defendant did not limit its response to the additional facts submitted by Plaintiffs.

If Defendant was able to deny or qualify Plaintiffs' denials and qualifications, the process would turn into a feedback loop. Defendant must limit its reply to the additional facts submitted by the opposing party. L. Cv. R. 56(c). The plain language of the rule indicates that the reply is only to be made with respect to the additional facts submitted by Plaintiffs. As such, the Court disregards paragraphs 2-10 of Defendant's reply statement of material facts at Docket No. 50.

## II.    Relevant Factual Background

Plaintiffs' and Defendant's statements of material uncontested facts ("PSUMF" and "DSUMF" respectively), reveal the following undisputed material facts:

---

[1] Specifically, Defendant replied to paragraphs 7, 8, 12, 16, 28, 29, 30, 31, and 32 of Plaintiffs' opposition to Defendant's statement of uncontested material facts. (Docket No. 50 ¶ 2-10).

Plaintiffs organized Calle Cristo 201, Inc., a Puerto Rico corporation in 1994. (PSUMF ¶¶ 4, E; DSUMF ¶¶ 4, E). Calle Cristo's officers were Harry Gazelle, Donna Gazelle, and their attorney, Jorge Miguel Suro Ballester. (PSUMF ¶ 3; DSUMF ¶ 3). As of June of 2014, Plaintiffs owned all the shares of Calle Cristo. (DSUMF ¶ D; PSUMF ¶ D).

Calle Cristo's assets consisted of two buildings at 201-203 Cristo Street, in Old San Juan, Puerto Rico and two bank accounts at UBS. (PSUMF ¶ 5; DSUMF ¶ 5). Calle Cristo was the sole owner in fee simple of the property at 201-203 Cristo Street. (DSUMF ¶ E; PSUMF ¶ E). Through Calle Cristo, Plaintiffs rented the buildings—a commercial space and six apartment units. (PSUMF ¶ 1; DSUMF ¶ 1). Plaintiffs collected the rent money and deposited it into the two UBS bank accounts. (PSUMF ¶ 5; DSUMF ¶ 5).

Plaintiffs decided to sell Calle Cristo, and they requested that their real estate broker, Mercy Zayas, set the asking price at $2 million. (PSUMF ¶ 6; DSUMF ¶ 6). Following negotiations and receipt of another offer, Plaintiffs agreed to sell Calle Cristo for $1.8 million to Defendant, a Puerto Rico limited liability company, with its principal place of business in Puerto Rico. (PSUMF ¶¶ 6, 12, F; DSUMF ¶¶ 6, 12, F).

On September 10, 2015, per the request of Robert Daniel, Plaintiffs provided Calle Cristo's 2014 financial statement, 2014 income tax return, 2014 annual report, and 2014 Puerto Rico personal property tax. (DSUMF ¶¶ A, H, I; PSUMF ¶¶ A, H, I). The 2014 tax return, signed by Harry Gazelle, included a comparative balance sheet stating that Calle Cristo's cash assets totaled $219,455 and another balance sheet stating that as of December 31, 2014, Calle Cristo's total current assets were $219,454.68 in checking and savings accounts. (PSUMF ¶ 14; DSUMF ¶ 14). Calle Cristo's financial statement contained representations and warranties made by Plaintiffs and identified its current assets as of December 31, 2014 as $219,454.68 divided into two bank

accounts at UBS. (PSUMF ¶ 33; DSUMF ¶ 33). The 2014 annual report filed with the Department of State lists Calle Cristo's current assets as $219,455. (PSUMF ¶ 34; DSUMF ¶ 34). Daniel looked "closely" at the financial documents on September 10, 2015, fourteen days before the parties executed the Stock Purchase Agreement ("SPA"). (DSUMF ¶ J; PSUMF ¶ J).

On September 21, 2015, Javier Feliciano Guzmán emailed Zilmarie Delgado Pieras two documents that she attached to her email dated September 23, 2015 to Alan McCall. (DSUMF ¶ Q; PSUMF ¶ Q)

Plaintiffs used an accountant, an attorney, a real estate broker, and a manager when considering the terms of the SPA. (PSUMF ¶ 11; DSUMF ¶ 11). The SPA identified Plaintiffs as the "sellers" and Defendant as the "buyer." (PSUMF ¶ 21; DSUMF ¶ 21). It provided for the sale of all Calle Cristo's shares in exchange for consideration of $1,800,000.00. Id.

Defendant stated in the SPA that it inspected the property and that such property would be received "as is where is." (DSUMF ¶ V; PSUMF ¶ V). Plaintiffs represented and warranted that the property was "not affected by liens or encumbrances not listed in the [property's] Title Report." (DSUMF ¶ W; PSUMF ¶ W).

The SPA includes a total of eighteen paragraphs of "Representations and Warranties" made by the Plaintiffs. (PSUMF ¶ 22; DSUMF ¶ 22).

Paragraph 6 of the Representations and Warranties in the SPA states in its entirety:

> The Financial Statement and other financial information provided by SELLERS to BUYER is correct and complete in all material respects and fairly represents the financial condition of the CORPORATION. The CORPORATION does not have any liabilities, including but not limited to liabilities related to income, property, sales, municipal or any other type of taxes.

(PSUMF ¶ 23; DSUMF ¶ 23).

Paragraph 3 of the Representations and Warranties in the SPA states that Plaintiffs sold their shares "free and clear of all security interests, liens, encumbrances, equities, rights of third parties, restrictions, pledges, adverse claims and other charges." (PSUMF ¶ 24; DSUMF ¶ 24).

With respect to escrow agreement, paragraph 8 of the Representations and Warranties in the SPA states that:

> Simultaneously with the execution of this Agreement, SELLERS and BUYER agree to withhold the amount of $180,000.00 from the purchase price of the SHARES and deposit the same in escrow with The Title Security Group, Inc. (the "Escrow Agent") to secure SELLERS representation[s] and warranties in this Agreement, pursuant to the terms and conditions of the Escrow Agreement to be executed between SELLERS, BUYER and the Escrow Agent, attached hereto as Exhibit 4. Notwithstanding the above, SELLERS agrees [sic.] to indemnify and hold BUYER harmless from any from [sic.] all claims, damages, fines and penalties, including without limitation, reasonable attorney's fees, costs and expenses that BUYER or the CORPORATION may suffer, sustain, incur or become subject to, arising out of, based upon or in connection with such debts or liabilities from a material inaccuracy of any representation or material breach of any warranty or agreement made by SELLERS in this Agreement.

(PSUMF ¶ 25; DSUMF ¶ 25).

The "Entire Agreement" clause of the SPA reads as follows: "This Agreement (including any written amendments hereof executed by the parties) constitutes the entire Agreement and supersedes all prior agreements and understandings, oral and written, between the parties hereto with respect to the subject matter hereof." (PSUMF ¶ 26; DSUMF ¶ 26).

The "Governing Law" clause of the SPA reads as follows:

> This Agreement and all transactions contemplated hereby, shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Puerto Rico. In the event that litigation results from or arises out of this Agreement or the performance thereof, the parties agreed [sic.] to reimburse the prevailing party's reasonable attorney's fees, court costs, and all other expenses, whether or not taxable by the court as costs, in addition to any other relief to which the prevailing party may be entitled.

(PSUMF ¶ 27; DSUMF ¶ 27).

Neither Daniel nor anyone acting on his behalf requested that Plaintiffs leave any money in Calle Cristo's bank accounts. (DSUMF ¶ L; PSUMF ¶ L). Harry Gazelle read the SPA before signing it and understood that the SPA constituted the "entire agreement" between the parties and was satisfied with its terms. (PSUMF ¶¶ 9, 10; DSUMF ¶¶ 9, 10). He understood that the purpose of placing $180,000 in escrow was to secure Plaintiffs' representation and warranties in the SPA. (PSUMF ¶ 18; DSUMF ¶ 18). Donna Gazelle read the SPA in its entirety and understood its terms and conditions before she signed it. (PSUMF ¶ 20; DSUMF ¶ 20). Harry Gazelle signed the SPA on behalf of Calle Cristo 201, Inc. (PSUMF ¶ 8; DSUMF ¶ 8).

The parties executed the SPA on September 24, 2015, fourteen days after Defendant received Calle Cristo's financial information. (PSUMF ¶ 15, R; DSUMF ¶ 15, R). Besides the SPA, Plaintiffs did not enter into any other contract or agreement with Defendant. (PSUMF ¶ 17; DSUMF ¶ 17). On the same date, Defendant insured the property for $1,800,000. (DSUMF ¶ Y; PSUMF ¶ Y).

The closing statement noted the following real estate commissions: (1) Christiansen Commercial Real Estate - $22,500; (2) Gonzalo M. Ferrer - $22,500; (3) Eneida Romany - $6,750; and (4) Value Added Commercial Real Estate Services, PSC - $38,250. (DSUMF ¶ Z; PSUMF ¶ Z). The total of all commissions was $90,000, or 0.05% of $1.8 million. (DSUMF ¶ AA; PSUMF ¶ AA). Roe Co., acting on Defendant's behalf, reimbursed Harry Gazelle $30,099.42 for utilities deposits and operating expenses. (DSUMF ¶ BB; PSUMF ¶ BB). Neither Daniel, nor anyone acting on his behalf requested that the reimbursements be deducted from the purchase price. (DSUMF ¶ CC; PSUMF ¶ CC).

Plaintiffs then deposited $180,000 in an escrow account to secure the representations and warranties they made in the SPA. (DSUMF ¶ FF; PSUMF ¶ FF). According to the escrow

agreement, $90,000 would be released to Plaintiffs on December 23, 2015 and the remaining $90,000 would be released on March 22, 2016. (DSUMF ¶ GG; PSUMF ¶ GG). The current balance of the escrow account is $152,219.81; on August 11, 2016 Plaintiffs requested that Defendant release the remaining funds but Defendant declined. (DSUMF ¶ HH, II; PSUMF ¶ HH, II).

### III.     Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a). "An issue is genuine if it may reasonably be resolved in favor of either party at trial . . . and material if it possess[es] the capacity to sway the outcome of the litigation under the applicable law." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations and quotations omitted).

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the Court finds that a genuine issue of material fact remains, the resolution of which

could affect the outcome of the case, then the Court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the Court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the nonmoving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

When, however, "'the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586–587 (1986) (footnote omitted)). "'[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (quoting Liberty Lobby, 477 U.S. 242, 247–48 (1986)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id.

"Cross-motions for summary judgment do not alter the summary judgment standard, but instead simply require [the Court] to determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." Wells Real Estate Inv. Trust II, Inc. v.

Chardon/Hato Rey P'ship, S.E., 615 F.3d 45, 51 (1st Cir. 2010) (citation and internal quotation marks omitted). "Although it is well-settled that the court must decide each motion for summary judgment on its own merits, this does not mean that each motion must be considered in a vacuum." Id. (citation and internal quotation marks omitted). "'Where, as here, cross-motions for summary judgment are filed simultaneously, or nearly so, the district court ordinarily should consider the two motions at the same time, applying the same standards to each motion.'" Id. (quoting P.R. American Ins. Co. v. Rivera–Vázquez, 603 F.3d 125, 133 (1st Cir. 2010)).

**IV. Discussion**

A. Defendant's Motion for Summary Judgment

Defendant contends that by purchasing all shares of Calle Cristo through the SPA, they purchased all of Calle Cristo's assets, including the $219,454.68 listed in Plaintiffs' financial statements. (Docket No. 28 at 6-7). Because Plaintiffs structured the transaction as a sale of a corporation's stock rather than the sale of real property and the SPA constituted the "entire agreement," Defendant argues that it is entitled to the cash. Id.

Although Defendant cites to Puerto Rico corporations law, the underlying issue is one of basic contract law. The Puerto Rico Civil Code provides that "[a] contract exists from the moment one or more persons consent to bind himself or themselves, with regard to another or others, to give something or to render some service." P.R. LAWS ANN. tit. 31 § 3371. Such a contract will be binding, "provided the essential conditions required for [its] validity exist." Id. § 3451. To form a valid, binding contract, there must be: (1) consent of the parties, (2) an object of the contract, and (3) cause for the obligation, i.e., consideration. Id. § 3391.

Although Plaintiffs have not explicitly raised the issue of "dolo," their claim that Defendant knew that the agreement contemplated only the sale of real property but later tried to "squeeze"

additional money out of Plaintiffs necessitates a discussion on the matter.[2] (Docket No. 40 at 9). "Under Puerto Rico contract law, fraud that affects a contracting party is commonly referred to as "dolo" or deceit, and can be manifested in one of two situations." <u>Burk v. Paulen</u>, 100 F. Supp. 3d 126, 134 (D.P.R. 2015) (citations omitted). First, dolo may be present during the formation of a contract; second dolo may occur during the performance of the contract. <u>Portugues-Santana v. Rekomdiv Int'l</u>, 657 F.3d 56, 59 (1st Cir. 2011) (citation omitted).

Contractual dolo arising during the performance of the contract does not result in the nullification of the contract; instead, "Article 1060 of the Civil Code establishes that the party who engages in dolo is liable for all damages 'which clearly may originate from the nonfulfillment of the obligation.'" <u>Puerto Rico Tel. Co. v. SprintCom, Inc.</u>, 662 F.3d 74, 99 (1st Cir. 2011) (quoting P.R. LAWS ANN. tit. 31, § 3024). Such damages are "broader than those stemming from a good faith breach of contract, where, in contrast, damages are limited to 'those foreseen or which may have been foreseen, at the time of constituting the obligation, and which may be a necessary consequence of its nonfulfillment.'" <u>Id.</u> (quoting P.R. LAWS ANN. tit. 31, § 3024). "Notably, the Puerto Rico Supreme Court has stated that dolo 'in the performance of obligations is equalized to bad faith.'" <u>Id.</u> (quoting <u>Canales v. Pan Am.</u>, 12 P.R. Offic. Trans. 411, 112 P.R. Dec. 329, 340 (1982)). The contracting parties' good faith is presumed; rebuttal of such a presumption requires evidence of intentional fault or bad faith. <u>Citibank Glob. Markets, Inc. v. Rodriguez Santana</u>, 573 F.3d 17, 29 (1st Cir. 2009).

Here, Plaintiffs allege that Defendant knew that the contract concerned solely the real property at 201-203 Cristo Street and only later "concocted" a plan to wrest more than $200,000 in additional cash from Plaintiffs. (Docket No. 40 at 9). Plaintiffs point to various pieces of

---

[2] See <u>Puerto Rico Tel. Co. v. SprintCom, Inc.</u>, 662 F.3d 74, 99 (1st Cir. 2011) ("[A]llegations of bad faith may be construed as allegations of dolo. . . .")

1 evidence to support their contention that Defendant acted in bad faith. They cite to an email[3] dated

2 September 23, 2015—one day before the closing—from Defendant's title insurance attorney,

3 Zilmarie Delgado Pieras, in which she refers to the property in Old San Juan as Calle Cristo's

4 "only asset." (Docket No. 33 at 4). Plaintiffs also submit that Defendant's delay of 321 days after

5 the closing before claiming it was entitled to the cash, indicates that Defendant had no initial intent

6 to take the money and only realized they might be able to get the money well after the fact. (Docket

7 No. 40 at 7). In addition, Plaintiffs aver that Defendant's decision to insure the real property for

8 exactly $1.8 million—the precise purchase price of Calle Cristo—shows that Defendant had the

9 purpose and intent to purchase the real property and nothing more. Id.

10      When viewed in the light most favorable to the nonmoving Plaintiffs, an inference may be

11 made that Defendant knew and intended that the contract would only include the real property at

12 201-203 Cristo Street, and only determined after the fact that it could take advantage of the

13 situation by requiring Plaintiffs to include cash that was not contemplated in the original

14 agreement. If this is the case, it is possible that Defendant acted with dolo. Resolution of this issue

15 would "'sway the outcome of the litigation under the applicable law.'" Iverson, 452 F.3d at 98

16 (quoting Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). As such, a genuine issue exists as

17 to a material fact and summary judgment for Defendant is not appropriate.

18      B.   Plaintiffs' Cross-Motion for Summary Judgment

19      Plaintiffs argue that they should be granted summary judgment because Defendant knew

20 exactly what it was purchasing, i.e. solely the real property at 201-203 Cristo Street, and that

21 Defendant's attempt to collect the $219,454.68 was a "stratagem concocted 321 days" after the

22 transaction to "squeeze money" from Plaintiffs that Defendant was not entitled to. (Docket No.

23

24 _____

[3] Defendant has stipulated to the email's authenticity. (Docket No. 38).

40 at 7). Plaintiffs contend that Attorney Delgado-Pieras's statement about the property at 201-203 Cristo Street being Calle Cristo's "only asset" indicates that Defendant intended to purchase only the real property and nothing more. Id. at 6-7. Plaintiffs also point to the fact that Defendant insured the real property for $1.8 million—the same amount paid for the purchase of Calle Cristo—to show that Defendant initially only intended to purchase the property at 201-203 Cristo Street. Id. at 7. Additionally, Plaintiffs posit that the 321 day delay in requesting the cash indicates that Defendant didn't enter into the contract with the understanding that it would receive the money. Id.

Defendant counters that when Attorney Delgado-Pieras said the real property at 201-203 Cristo Street was Calle Cristo's "only asset," she was simply referencing "the only asset [Defendant] w[as] insuring." (Docket No. 49 at 6). In addition, although it did insure the real property for $1.8 million, Defendant argues that there is no reason it couldn't have insured the property for a different amount, had it been willing to pay the additional money; as such, the amount for which the property was insured has no bearing on Defendant's intent or understanding of what assets were included in the contract. Defendant contends that Plaintiffs, with full understanding of the terms of the contract, unilaterally and wrongly decided to keep certain assets contemplated in the sale of Calle Cristo for themselves. (Docket No. 49 at 2).

When viewed in the light most favorable to the nonmoving Defendant, an inference may be made that Plaintiffs knew and intended that the contract would include all assets of Calle Cristo, and only realized after the fact that they had made a mistake in drafting the contract. If this is the case, it is possible that Plaintiffs acted with dolo. Resolution of this issue would "'sway the outcome of the litigation under the applicable law.'" Iverson, 452 F.3d at 98 (quoting Cadle Co.,

116 F.3d at 960 (1st Cir. 1997). As such, a genuine issue exists as to a material fact and summary judgment for Plaintiffs is not appropriate.

**V.     Conclusion**

For the reasons stated above, Defendant's motion for summary judgment at Docket No. 28 is **DENIED** and Plaintiffs' cross-motion for summary judgment Docket No. 40 is **DENIED**.

**SO ORDERED.**

In San Juan, Puerto Rico this 12th day of March, 2018.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge